# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

SPANLEY EUGENE EDRIC HARRIS,        *
                                    *
    Petitioner,             *
                                    *
vs.                                 *   CIVIL ACTION NO. 17-00533-JB-B
                                    *
CYNTHIA STEWART,                    *
                                    *
    Respondent.             *

## REPORT AND RECOMMENDATION

Spanley Eugene Edric Harris, a state inmate in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Doc. 1).  The petition has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 72(a)(2)(R), and Rule 8 of the Rules Governing Section 2254 Cases.  The undersigned has conducted a careful review of the record and finds that no evidentiary hearing is required to resolve this case.[1]  Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317 (11th

---

[1] Because Harris filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required."  Kelley v. Secretary for the Dep't of Corrs., 377 F.3d 1317, 1337 (11th Cir. 2004).  Harris has failed to establish that an evidentiary hearing is warranted in this case.  Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The burden is on the petitioner . . . to establish the need for an evidentiary hearing.").

Cir. 2004).

Having carefully considered Harris' petition and Respondent's answer (Doc. 9), the undersigned finds that Harris's petition is due to be denied.   Accordingly, it is **RECOMMENDED** that Harris's habeas petition be **DENIED**; that judgment be entered in favor of Respondent and against Petitioner, Spanley Eugene Edric Harris, pursuant to 28 U.S.C. § 2244(d); and that, should Harris seek the issuance of a certificate of appealability, his request should be denied, along with any request to appeal *in forma pauperis*.

## I.   BACKGROUND FACTS

On November 16, 2011, a jury in the Circuit Court of Mobile County, Alabama, returned a verdict finding Harris guilty of capital murder, in violation of Ala. Code § 13A-5-40(a)(2).[2] (Docs. 1 at 2; 9 at 1; 9-1 at 6; 9-2 at 1; 9-4 at 7, 61). That same day, Harris was sentenced to life imprisonment without the possibility of parole. (Id.).

On November 16, 2011, Harris filed a notice of appeal. (Docs. 9 at 1; 9-1 at 6; 9-4 at 7, 61). On appeal, Harris argued that "the evidence was insufficient to sustain his guilty conviction of capital murder" and "that the trial court committed reversible

---

[2] Although Respondent states that Harris was convicted of violating Ala. Code § 13A-9-40(a)(2) (Doc. 9 at 1), a review of the docket and the Alabama Code reveals that Harris was convicted of violating Ala. Code § 13A-5-40(a)(2). (Doc. 9-2 at 1); see also Ala. Code § 13A-5-40(a)(2).

error in allowing the State to elicit highly prejudicial hearsay testimony." (Doc. 9-2 at 3). On August 17, 2012, the Alabama Court of Criminal Appeals affirmed the judgment of the trial court. (Id. at 14; Doc. 9-3 at 1). "The Court overruled Harris's application for rehearing on August 31, 2012, and on October 12, 2012, the Alabama Supreme Court denied his petition for a writ of certiorari."[3] (Doc. 9 at 2). On October 15, 2012, the Alabama Court of Criminal Appeals issued a certificate of judgment. (Doc. 9-3).

On July 29, 2013, the state trial court granted Harris's request for appointed counsel to assist in filing a Rule 32 request for relief. (Docs 9-4 at 61; 9-5 at 15). On November 26, 2013, appointed counsel filed a motion to withdraw. (Doc. 9-4 at 49). In the motion, appointed counsel noted that the trial court had appointed him to assist Harris with a Rule 32 petition because of concerns about whether Harris was eligible for a "life without the possibility of parole" sentence due to his age at the time of the offense. Harris' appointed counsel represented that Harris "ha[d] now filed a Rule 32 petition" and opined that Harris was indeed eligible for a "life without the possibility of parole" sentence.

---

[3] Other than Respondent's account of this portion of the procedural history of Harris's case, there is no documentation in the record indicating that Harris filed an application for rehearing or a petition for writ of certiorari regarding his direct appeal.

(<u>Id.</u>).  He also opined that there was no further reason to proceed with the Rule 32 petition.  (<u>Id.</u>).  In response, the state trial court granted the motion and permitted appointed counsel to withdraw.

In April 2016, Harris filed a Rule 32 petition.  In the petition, Harris raised a single issue: that the trial court lacked the jurisdiction to impose a sentence on him because he was constructively denied the right to counsel.  (Doc. 9-4 at 25, 30).  Specifically, Harris claimed that "[c]ounsel's failure to plea [sic] matters relating to Petitioner's mental state or at least use it as mitigation" resulted in "a constructive denial of [the] right to counsel."  (<u>Id.</u> at 31).

At the onset, the trial court addressed the timeliness of the Harris's petition and observed that, while Harris' former attorney had represented, in November 2013, that Harris had filed a Rule 32 petition, the Court had no record of such a petition prior to the one filed on April 4, 2016.  The Court then found that:

> In light of procedural background, and equitable tolling, the Court deems the instant Rule 32 petition to be timely filed by Harris.

(Doc. 9-4 at 61).

Turning to the merits of Harris's petition, the trial court noted that a psychologist testified that Harris was "fully capable of appropriate decision making and judgment at the time of the [murder]."  (Docs. 9-4 at 62; 9-5 at 17).  The court also found

that Harris failed to prove ineffective assistance of counsel under the standard established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). (Docs. 9-4 at 63-64; 9-5 at 18-19).  Therefore, the court denied Harris's Rule 32 petition. (Docs. 9-4 at 66; 9-5 at 21).

On April 3, 2017, Harris appealed the circuit court's denial of his petition.  (Doc. 9-4 at 69).  On August 4, 2017, the Alabama Court of Criminal Appeals affirmed the circuit court's decision. (Doc. 9-8).  Harris then filed an application for rehearing, which was overruled on August 25, 2017.  (Doc. 9-9).  Harris subsequently filed a petition for writ of certiorari with the Alabama Supreme Court, which was denied on October 13, 2017. (Doc. 9-10).  The Alabama Court of Criminal Appeals then entered a certificate of judgment on October 13, 2017.  (Doc. 9-11).

Harris filed the instant petition for habeas corpus relief on November 27, 2017.[4]  (Doc. 1 at 13).  In it, he attacks his conviction by asserting that he was constructively denied counsel when his trial attorney "failed to investigate and gather evidence to support [his] mentally incompetent defense."  (Id. at 7). Harris specifically contends that his trial counsel abandoned the issue of his mental incompetency "without seeking an independent

---

[4] Under the mailbox rule, a prisoner's petition is deemed filed on the date it is delivered to prison officials for mailing, absent contrary evidence.  See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

assessment into [his] mental state." (Id. at 14).  In addressing the timeliness of his petition, Harris avers that his petition is not time-barred because it "implicates the jurisdiction of the trial court" and because "the dictum of Section 2244(d)(1)" allows him to file an otherwise untimely petition where "the sentence imposed against him in state court was in violation of the constitution or laws of the United States . . ." (Id. at 12).  Harris argues that the aforementioned statement grants him the ability to file the instant petition because his argument rests on the claim that his "conviction is unauthorized by law because [he] was denied counsel at the stage where [his] counsel did not develop [his] mentally incompetency [sic] claim to stand trial." (Id.).

In Respondent's brief in opposition to Harris's petition, Respondent asserts that Harris's conviction became final on January 15, 2013, and that his Rule 32 petition, filed in 2016, did not toll the limitation period as it had already expired by the time the Rule 32 petition was filed. (Doc. 9 at 3-4). Respondent further argues that Harris has failed to offer facts that would support equitable tolling; thus, his habeas petition should be dismissed as it was filed beyond the one-year period of limitations prescribed in 28 U.S.C. § 2244(d). (Id.). Finally, Respondent asserts that Harris's claim is barred from review by this Court because it was adjudicated on the merits by the state

courts and the decisions of those courts were not contrary to established law.  (Id. at 10).

For the reasons set forth herein, the undersigned **RECOMMENDS** that Harris's petition be **DISMISSED**.

**II.   ANALYSIS**

Pursuant to 28 U.S.C. § 2244 (d)(1), as amended by the April 24, 1996, enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996, § 101 (Supp. II 1997) ("AEDPA"), a state prisoner seeking a federal habeas corpus remedy must file his federal petition within one year of the "conclusion of direct review or the expiration of the time for seeking such review." The Act provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme

> Court and made retroactively applicable
> to cases on collateral review; or
>
> (D) the date on which the factual
> predicate of the claim or claims
> presented could have been discovered
> through the exercise of due diligence.
>
> (2) The time during which a properly filed
> application for State post-conviction or
> other collateral review with respect to the
> pertinent judgment or claim is pending shall
> not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d).

As noted above, the AEDPA imposes a one-year limitations period on § 2254 actions and includes one of several commencement dates, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); see also Pugh v. Smith, 465 F.3d 1295, 1298 (11th Cir. 2006). The conviction at issue occurred on November 16, 2011, when Harris was convicted of capital murder. Harris timely appealed his conviction,[5] which was affirmed by the Alabama Court of Criminal Appeals on August 17, 2012. The appellate court issued a certificate of judgment on October 15, 2012. Since Harris did not file a petition for writ

---

[5] Under Ala. R. App. P. 4(b)(1), criminal defendants have forty-two (42) days after the pronouncement of the sentence in which to file a notice of appeal. Here, Harris was sentenced to life in prison without parole on November 16, 2011, and filed his appeal that same day. (Docs. 1 at 2; 9 at 1; 9-1 at 6; 9-2 at 1; 9-4 at 7, 61).

of certiorari with the United States Supreme Court, his sentence became final on January 14, 2013.[6]  Accordingly, the statute of limitations for Harris to file a federal habeas petition began to run on January 14, 2013 and, in the absence of a tolling event, expired one year later, on January 14, 2014.  Thus, unless Harris can demonstrate that the tolling provisions of the AEDPA were triggered, his habeas petition is untimely.

Section 2244(d)(2) of the AEDPA provides for the tolling of the limitations period pending state court review of a properly filed application for post-conviction relief.  See In re Hill, 437 F.3d 1080, 1083 (11th Cir. 2006).  Although it is without question that Harris filed a Rule 32 petition with the state court in 2016, it was not pending during the running of the AEDPA limitations period.  The law is clear that petitions "filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."  Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000); see also Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) ("A state court

---

[6] In general, a judgment becomes final at the expiration of the ninety-day period in which to seek certiorari review from the Supreme Court of the United States. See Nix v. Secretary, Dep't of Corrs., 393 F.3d 1235, 1236 (11th Cir. 2004). However, prior to seeking certiorari review from the Supreme Court, a state habeas petitioner must seek review from the state's highest court of review.  Pugh, 465 F.3d at 1299.  Since Harris petitioned the Alabama Supreme Court for writ of certiorari, he is entitled to the ninety-day period in computing the commencement of the running of his statute of limitations.

filing after the federal habeas filing deadline does not revive it."); Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application actually pending in state court."). Because the AEDPA limitations period had already expired by the time Harris filed his Rule 32 petition in 2016, that petition had no tolling effect. Thus, Harris's federal habeas petition, which was filed more than two years after the expiration of AEDPA's one-year deadline, is untimely.

Before the Court can recommend dismissal of Harris's habeas petition as untimely, the Court must determine whether Harris has pled extraordinary circumstances that require a contrary conclusion. That is, the Court must examine whether Harris has demonstrated that the equitable tolling provisions of the AEDPA have been triggered, which will excuse the untimeliness of his petition.

The Eleventh Circuit has stated:

> Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.' Sandvik [v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)]. Equitable tolling is an extraordinary remedy which is typically applied sparingly. See Irwin v. Dept. of Veterans Affairs, 498

> U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435
> (1990).

Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000).  See also

Holland v. Florida, 560 U.S. 631, 645, 130 S. Ct. 2549, 2560, 177

L. Ed. 2d 130, 143 (2010) ("§ 2244(d) is subject to equitable

tolling in appropriate cases[,] . . . We have previously made clear

that a 'petitioner' is 'entitled to equitable tolling' only if he

shows '(1) that he has been pursuing his rights diligently, and

(2) that some extraordinary circumstance stood in his way' and

prevented timely filing."); Diaz v. Secretary for the Dep't of

Corrs., 362 F.3d 698, 701 (11th Cir. 2004).  Moreover, as a general

rule, "the 'extraordinary circumstances' standard applied in this

circuit focuses on the circumstances surrounding the late filing

of the habeas petition, rather than the circumstances surrounding

the underlying conviction."  Helton v. Secretary of Dep't of

Corrs., 259 F.3d 1310, 1314 (11th Cir. 2001), cert. denied, 535

U.S. 1080 (2002).

    In this action, Harris has not alleged that he pursued his

rights diligently and that circumstances beyond his control

prevented him from timely filing his federal petition.  However,

as noted, *supra*, the state circuit court concluded, based on an

assertion in the motion of Harris's former counsel, that Harris

may have filed a Rule 32 petition in or around November 2013,

although there is no court record of any such filing.  The state

court accorded Harris the benefit of the doubt, held that he was entitled to equitable tolling, and reached the merits of Harris's claim. Given the complete absence of evidence reflecting any due diligence by Harris between 2013 when his appointed counsel was permitted to withdraw, and 2016, when he filed his Rule 32 petition with the Court, the undersigned is reluctant to find equitable tolling based on the record before the Court. However, assuming, *arguendo*, that Harris had established equitable tolling, he would not be entitled to any relief.

Harris's sole claim in his habeas petition is that he was constructively denied counsel due to his trial counsel's alleged failure to investigate and gather evidence in support of a defense of mental incompetency. The Court's review of Harris' petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, "the role of the federal courts is strictly limited." Jones v. Walker, 496 F.3d 1216, 1226 (11th Cir. 2007). Specifically, 28 U.S.C. § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of
> the United States; or
>
> (2) resulted in a decision that was
> based on an unreasonable
> determination of the facts in light
> of the evidence presented in the
> State court proceeding.
>
> (e)(1) In a proceeding instituted by an
> application for a writ of habeas corpus by a
> person in custody pursuant to the judgment of
> a State court, a determination of a factual
> issue made by a State court shall be presumed
> to be correct. The applicant shall have the
> burden of rebutting the presumption of
> correctness by clear and convincing evidence.

28 U.S.C. § 2254.

Thus, a federal court may grant habeas relief only if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the way the United States Supreme Court did on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); Price v. Vincent, 538 U.S. 634, 641, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003) (noting that a federal court will disturb a state court's habeas decision on the merits only if the petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established constitutional law as determined by the United States or if the decision rested upon an unreasonable factual determination).

"[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011). In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied . . . [T]he deference due is heavy and purposely presents a daunting hurdle for a habeas petitioner to clear." Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011); see also Greene v. Fisher, 565 U.S. 34, 132 S. Ct. 38, 181 L. Ed. 2d 336 (2011) (noting that the AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.") (citations and internal quotation marks omitted); Cullen v. Pinholster, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (noting that the AEDPA standard is a "difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (citations and internal quotation marks omitted).

Accordingly, in evaluating Harris's § 2254 petition, the Court takes great care to abide by the structure that "[a] federal

court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." Hill v. Humphrey, 662 F.3d 1335, 1355 (11th Cir. 2011); see also Reese v. Secretary, Fla. Dep't of Corrs., 675 F.3d 1277, 1286 (11th Cir. 2012) ("This inquiry is different from determining whether we would decide de novo that the petitioner's claim had merit."). Having established the proper standard of review, the Court turns to Harris's constructive denial of counsel claim.

**A. Strickland Standard.**

The Sixth Amendment guarantees criminal defendants a right to reasonably effective legal assistance. Roe v. Flores-Ortega, 528 U.S. 470, 476, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). In Strickland v. Washington, the Supreme Court adopted a two-prong standard for evaluating claims of ineffective assistance of counsel. Strickland, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the requirements of this two-prong standard, a petitioner must establish (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness, id. at 687-88; and (2) that counsel's deficient performance prejudiced the petitioner by demonstrating a "reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."
Id. at 694.  Because the failure to demonstrate either deficient
performance or prejudice is dispositive of the claim, courts
applying the Strickland test "are free to dispose of
ineffectiveness claims on either of [Strickland's] two grounds."
Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).

Where constructive denial of counsel altogether is found,
prejudice can be presumed.  Strickland, 466 U.S. at 692, 104 S.
Ct. at 2067; see also United States v. Cronic, 466 U.S. 648, 659
& n.25, 104 S. Ct. 2039, 2047, 80 L. Ed. 2d 657 (1984) (noting
that a structural error exists where counsel is "prevented from
assisting the accused during a critical stage of the proceeding.").
Certain circumstances are so likely to prejudice a criminal
defendant that "litigating their effect in a particular case is
unjustified."  Cronic, 466 U.S. at 657. These include: (1) the
complete denial of counsel; (2) counsel's entire failure to subject
the prosecution's case to meaningful adversarial testing; and (3)
instances in which counsel is available to assist during trial,
but "the likelihood that any lawyer, even a fully competent one,
could provide effective assistance is so small that a presumption
of prejudice is appropriate without inquiry into the actual conduct
of the trial." Id. at 659-660. The Eleventh Circuit has held that
"causing a complete breakdown of communication between a defendant
and his attorney . . . constitutes a constructive denial of

counsel." United States v. Walker, 839 F.2d 1483, 1486 (11th Cir. 1988).  Where there has been a constructive denial of counsel or a breakdown in the adversarial process, prejudice can be presumed. Aldrich v. Wainwright, 777 F.2d 630, 634 (11th Cir. 1985).  In the absence of such, a defendant must show specific instances of actual prejudice in order to obtain relief. Id. at 634.

    B. **Application**.

    As noted, *supra*, Harris argues that he was constructively denied counsel when his trial counsel failed to investigate and gather evidence in support of a defense of mental incompetence. According to Harris, his mental incompetence was his only defense and, since this explanation was not presented at trial, his counsel denied him representation.  In summarily dismissing Harris's Rule 32 petition, the state trial court stated:

> A constructive denial of counsel occurs when the defendant is deprived of the "guiding hand of counsel." Powell v. Alabama, 278 U.S. 45, 69 (1932), cited in, United States v. Cronic, 466 U.S. 648, 660-61 (1984). . . .
>
> Harris argues that his counsel effectively abandoned him by not pursuing an insanity defense, a defense he now contends was the "only viable defense." However, the facts do not support this contention. First, in the opinion of the examining psychologist, the facts directly refuted an insanity defense. Dr. Doug McKeown opined that Harris "would have been fully capable of appropriate decision making and judgment at the time of the event." [Sealed Report of Doug McKeown, dated July 8, 2011.] The facts set forth in Harris' petition supposedly supporting an

insanity defense were known to Dr. McKeown at the time he rendered his opinion, and there is no indication that facts existed to support an insanity defense. Furthermore, the case against Harris was not airtight. There were no eyewitnesses to the shooting, only a dying declaration by the victim that she was shot by a person named "Red." The State was able to present other circumstantial evidence pointing to Harris, and Harris made some statements to the police which were arguably inculpatory, but a solid argument could be made that the best trial strategy for Harris was to maintain his not guilty plea and make the State attempt to prove its case – which was the trial strategy implemented by counsel for Harris.

In any event, there is no support for Harris' argument that his appointed counsel was "inert" or failed to subject the prosecution's case to meaningful adversarial testing. Accordingly, the Court finds that Harris' claim of denial of the right to counsel is due to be denied.

Finally, to the extent the proper basis for evaluating the performance of Harris' counsel is <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984), the Court concludes the result is the same.

(Docs. 9-4 at 62-63; 9-5 at 16-18).[7]

In reviewing Harris's claim on appeal and affirming the trial court's dismissal of the claim, the Alabama Court of Criminal Appeals stated:

Harris claimed that counsel's failure to secure or pursue medical records from Mobile

---

[7] The Court notes that the record at Doc. 9-4 is incomplete, as page three (3) of the circuit court's opinion is missing. (<u>See</u> Doc. 9-4 at 60-66). However, the missing page can be found in Doc. 9-5 on page sixteen (16). (<u>See</u> Doc. 9-5 at 16).

Mental Health in order to present an insanity defense amounted to ineffective assistance and, in support of his contention, he attached a copy of portions of those records to his petition as exhibits. However, he failed to state what the medical records would have revealed or how the records supported a finding of insanity. . . . Any allegation that the records may have shown a potential neurological deficiency or that the records may have shown that his involvement in the crime was affected by his condition is merely conjecture and speculation. Such a bare allegation does not meet the pleading and specificity requirements of Rules 32.3 and 32.6(b), Ala. R. Crim. P.

Moreover, the State attached an affidavit from one of Harris's trial counsels to its motion to dismiss. Harris's trial counsel explained that he and his co-counsel discussed the possibility of mounting an insanity defense. However, after having multiple opportunities to interact with Harris and evaluating his previous mental health history and his evaluation by the forensic psychologist, both counsel and co-counsel determined that an insanity defense was extremely unlikely to succeed based on the lack of any substantial evidence of insanity. Thus, counsel stated, the decision not to raise an insanity defense was based on the totality of the facts and circumstances of the case, and was a "well considered matter of trial strategy." (C. 55).

. . .

Given defense counsel's statements that it was a thorough and well-reasoned strategic decision to not present an insanity defense, we cannot say that Harris has satisfied either prong of the <u>Strickland</u> test.

. . .

To the extent that Harris alleged that his counsel was ineffective for failing to

> interview or call witnesses on his behalf to
> testify about his mental issues, this claim is
> being raised for the first time on appeal.
> Even if this claim was properly before this
> Court, Harris would not be entitled to relief.
>
> . . .
>
> Here, Harris failed to identify any witnesses
> that he felt should have been investigated or
> called to testify. He also failed to plead any
> facts indicating what admissible testimony
> those witnesses would have provided or what
> may have been included in their testimony.
> Further, Harris failed to allege facts
> indicating that if said witnesses would have
> been called to testify, that the probability
> of the outcome of his trial would have been
> different.

(Doc. 9-8 at 6-8).

Having reviewed the facts of this case, the undersigned cannot conclude that the state courts' rulings on Harris' claim were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. The trial court appropriately found that Harris's argument that an insanity defense was his only viable option was directly refuted by a psychologist who examined Harris and determined that he was not mentally insane at the time that he committed murder. Further, the Alabama Court of Criminal Appeals correctly concluded that Harris failed to adequately plead his claims and that his trial attorney's decision not to pursue an insanity defense was a question of trial strategy. Neither of these decisions is contrary

to clearly-established federal law, nor are they unreasonable determinations of fact in light of the evidence presented. This Court will not grant relief on a claim that has been adjudicated on the merits by the state courts unless the decision rendered was contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). Having examined the record in this case, the undersigned determines that the state appellate court's determination regarding counsel's performance was reasonable, and Harris has failed to establish that he was constructively denied the counsel guaranteed him by the Sixth Amendment.

"[N]o absolute duty exists to investigate particular facts or a certain line of defense. Under Strickland, counsel's conducting or not conducting an investigation need only be reasonable to fall within the wide range of competent assistance." Chandler v. United States, 218 F.3d 1305, 1317 (11th Cir. 2000). Further, "counsel need not always investigate before pursuing or not pursuing a line of defense." Id. Rather, "[i]nherent in this duty to conduct a substantial investigation into any . . . plausible lines of defense is the notion that strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Martinez v. Secretary, Fla. Dep't of Corrs., 684 Fed. Appx. 915, 923 (11th Cir. 2017) (internal quotations and

citations omitted).   Nothing in the record supports the notion that Harris' counsel's failure to investigate and mount a defense of mental insanity amounted to a constructive denial of counsel. This finding is underscored by the record, which establishes that Harris' counsel contemplated mounting the defense of mental insanity, but decided against it. That Harris was ultimately convicted of murder does not mean that his counsel's failure to mount a mental insanity defense constituted a constructive denial of counsel in violation of the Constitution.   See Johnson v. Holt, 2007 WL 1697011, *6, 2007 U.S. Dist. LEXIS 42690 (M.D. Ala. Jun. 11, 2007) ("The failure of the defense strategy alone does not rise to the level of ineffective assistance of counsel.").

Harris has not established that he was denied effective assistance of counsel, either actually or constructively.   He has neither alleged nor shown that his counsel's performance "fell below an objective standard of reasonableness[,]" Strickland, 466 U.S. at 668. He has further failed to prove that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also Weeks v. Jones, 26 F.3d 1030, 1038-39 (11th Cir. 1994) (explaining that to establish prejudice, a petitioner "would have to establish a reasonable probability that his trial counsel's failure to . . . present an insanity defense[] would have resulted in his being found not guilty by reason of insanity."); Collins v. United

States, 481 Fed. Appx. 525, 529 (11th Cir. 2012) (holding that petitioner's "bare and unsubstantiated assertions that a reasonable probability existed that a jury would have found him insane had trial counsel conducted an investigation were insufficient to support his [habeas petition].").

Additionally, although Harris has asserted that he was denied counsel at a critical stage of his criminal proceedings, so as to have been constructively denied counsel, he has not *proven* such a deprivation.  Further, he has failed to show that he was completely denied counsel (which would be refuted both by his own account and the record), that his counsel failed to subject the prosecution's case to any meaningful adversarial proceedings, or that his counsel represented him under circumstances in which no reasonable counsel could have provided effective assistance.  See Cronic, 466 U.S. at 659-660. A careful review of the record  does not reveal any evidence in support of Harris' position, nor is there any evidence that suggests that Harris was denied the counsel guaranteed him by the Constitution or that the decisions of the state courts were so fundamentally erroneous as to amount to a miscarriage of justice.  Thus, Harris' bare-bones contention that the failure to mount an insanity defense constituted a constructive denial of counsel is without merit.

Accordingly, the undersigned finds that the decision of the Alabama Court of Criminal Appeals was a reasonable determination

of the facts in light of the evidence presented, see 28 U.S.C. § 2254(d)(2), and that the Alabama courts rendered a decision that is neither contrary to, nor an unreasonable application of, clearly-established federal law. See 28 U.S.C. § 2254(d)(1). Therefore, Harris' claim that he was constructively denied counsel should be denied.

### III.    CONCLUSION

Based on the foregoing, it is the recommendation of the undersigned Magistrate Judge that Harris' petition for habeas corpus relief be denied, that this action be dismissed, and that judgment be entered in favor of the Respondent and against the Petitioner, Spanley Eugene Edric Harris.  It is further recommended that any motion for a Certificate of appealability or for permission to proceed in forma pauperis[8] be denied.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA GenLR 72(c). The parties

---

[8] An in forma pauperis action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact."  Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001).

should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

　　　**DONE** this **17th** day of **October, 2019.**

　　　　　　　　　**/s/ SONJA F. BIVINS**
　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**